**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DAVID PAGAN and
CRISTINA ORTIZ,
on behalf of plaintiffs and a class,

Plaintiffs,

vs.

FAY SERVICING, LLC,
doing business as
FAY MORTGAGE SERVICES,

Defendant.

**COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1. Plaintiffs, David Pagan and Cristina Ortiz, bring this action to secure redress from unlawful credit and collection practices engaged in by defendant Fay Servicing, LLC. Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with debt collection attempts. It also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

4. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5. The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6. Plaintiffs seek to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

**VENUE AND JURISDICTION**

7. This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331 and 28 U.S.C. §1337.

8. Venue and personal jurisdiction in this District are proper because plaintiffs are located here, defendant is headquartered here, and the events at issue occurred here.

**PARTIES**

9. Plaintiffs David Pagan and Cristina Ortiz reside in a single family home which they own in Oswego, Illinois.

10. Defendant Fay Servicing, LLC, is a limited liability company organized under the law of Delaware with its principal office at 440 S. LaSalle St., Suite 2000, Chicago, Illinois 60605. It has 3 other Northern Illinois locations and facilities in Carrollton, Texas and Tampa, Florida. Its registered agent and office is Registered Agent Solutions, Inc., 901 S. 2d Street, Suite 201, Springfield, IL 62704. It does business as Fay Mortgage Services.

11. Defendant Fay Servicing, LLC is a "residential special servicer." This is mortgage industry jargon for a servicer that intentionally seeks to service home mortgage loans in which the borrower is in default.

12. For example, in one June 1, 2015 press release, it stated that "Chicago, Ill.-based Fay Servicing is a special servicer which maximizes the value of residential loan portfolios for mortgage bankers and alternative real estate investors." (https://www.fayservicing.com/2015/06/01/fay-freddie-mac/)

13. In another June 1, 2015 press release, it stated that "Ed Fay is the founder and chief executive officer of Chicago-based Fay Servicing, a special servicer that specializes in

distressed and at-risk residential mortgages for banking institutions and alternative real estate investors." (https://www.fayservicing.com/2015/06/01/securitization-relabeled/)

14. Defendant Fay Servicing, LLC obtains ratings from rating agencies as a "residential special servicer." For example, on October 25, 2016, Moody's Investors Service announced (https://www.moodys.com/research/Moodys-assigns-an-SQ-assessment-of-SQ3-to-Fay-Servicing--PR_357066) that it "has assigned an SQ assessment of SQ3+ to Fay Servicing LLC (Fay) as a special servicer of residential mortgage loans. The special servicing SQ assessment is based on the company's above average collection abilities, above average loss mitigation results, above average foreclosure and REO timeline management, above average loan administration and below average servicing stability."

15. The same announcement stated that as of June 30, 2016, "Fay's servicing portfolio consisted of 38,783 loans with an unpaid principal balance of approximately $9.2 billion."

16. On December 6, 2016, Fitch affirmed a "U.S. residential special servicer rating" for Fay Servicing, LLC of "'RSS3+'; Outlook Stable." (https://www.fitchratings.com/site/pr/1015968#solicitation)

17. The servicing of loans which are in default when Fay Servicing, LLC first becomes involved with them is a regular part of the business of Fay Servicing, LLC.

18. All of the loans in the special servicing portfolio of Fay Servicing, LLC are serviced for others.

19. Defendant Fay Servicing, LLC uses the mails and telephone system in conducting its business.

20. Defendant Fay Servicing, LLC is a debt collector as defined in the FDCPA.

## FACTS

21. On or about September 2, 2016, Fay Servicing, LLC acquired servicing of plaintiffs' residential mortgage loan.

22. At the time, plaintiffs' loan was in default.

23. On or about September 12, 2016, Fay Servicing, LLC sent a "welcome" packet to

plaintiffs, at the address of their attorney in Morton Grove, Illinois.

24. The documents in the "welcome" packet are in Exhibits A-H in an envelope, Exhibit I.

25. Each of the documents in the "welcome" packet is a form document, with information relating to the particular loan inserted by computer in a standardized manner.

26. Exhibit F is entitled "Fair Debt Collections Practices Act (FDCPA) Validation Notice."

27. Exhibit F is the only document sent by defendant to plaintiffs which purports to be an FDCPA validation notice.

28. Exhibit F stated that "We are collecting the debt on behalf of: First Guaranty Mortgage Corporation."

29. Exhibit F stated a "total amount of debt" of $207,225.05, and a "current principal balance" of $207,225.05, and contained zeros for the current unpaid accrued interest, escrow balance, late charges, and NSF charges.

30. The numbers in Exhibit F were inaccurate, both as to the total owed and what was owed. Those inaccuracies were confusing as to what was actually owed, and did not accurately reflect how much they would need to pay off the loan (for example by selling the property), and are harmful to consumers as they makes it hard for consumers to judge which loss mitigation options might make sense at the time.

31. Statements from the prior servicer, Roundpoint, stated that the loan was in default, and that there were substantial amounts due on account of interest, escrow deficiency, "corporate advances," which apparently included attorney's fees and expenses, and late charges (Exhibit J).

32. Subsequently, Fay Servicing, LLC sent issued statements showing different amounts due (compared to Exhibit F) for interest, escrow, and other amounts. (Exhibit K)

**COUNT I – FDCPA**

33. Plaintiffs incorporate paragraphs 1-32.

34. Defendant violated 15 U.S.C. §1692g, by sending a "validation notice" which failed to accurately state the amount owed and what it consisted of. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875-76 (7th Cir. 2000) ("The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt. . . .What they certainly could do was to state the total amount due—interest and other charges as well as principal—on the date the dunning letter was sent. We think the statute required this.").

35. Section 1692g provides:

**§ 1692g. Validation of debts**

**(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--**

**(1) the amount of the debt;**

**(2) the name of the creditor to whom the debt is owed;**

**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**

**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt**

**collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

**(c) Admission of liability. The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.**

**(d) Legal pleadings. A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).**

**(e) Notice provisions. The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986 [*26 USCS §§ 1* et seq.], title V of Gramm-Leach-Bliley Act [*15 USCS §§ 6801* et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.**

36. For the same reason, the "validation notice" contained false statements, and violated 15 U.S.C. §1692e, 1692e(2) and 1692e(10).

37. Section 1692e provides:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of--**

> **(A) the character, amount, or legal status of any debt; or**
>
> **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

38. As a result of the violation, plaintiffs were deprived of information required to be

furnished by law and necessary for them to determine what to do regarding the defaulted debt.

**CLASS ALLEGATIONS**

39. Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

40. The class consists of (a) all individuals in Illinois, Indiana and Wisconsin (b) to whom Fay Servicing, LLC sent a "validation notice" (c) which failed to include amounts owed for escrow, unpaid accrued interest, late charges and/or NSF charges, (d) on a residential mortgage (e) that was in default when Fay Servicing, LLC obtained the loan, (f) which letter was sent at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

41. On information and belief, based on the size of defendant's portfolio and the use of a form letter filled out in a standardized manner, the class is so numerous that joinder of all members is not practicable.

42. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common question is whether defendant's "validation notice" complies with the FDCPA.

43. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

44. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and FDCPA litigation.

45. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights;

c. Congress intended class actions to be the principal enforcement

mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendant for:

i. Statutory damages;

ii. Attorney's fees, litigation expenses and costs of suit;

iii. Such other and further relief as the Court deems proper.

s/Daniel A Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

T:\34258\Pleading\Complaint DAE_Pleading.wpd

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/Daniel A Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**DOCUMENT PRESERVATION DEMAND**

Plaintiffs hereby demand that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiffs, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiffs demand that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/Daniel A Edelman
Daniel A. Edelman