IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID PAGAN and CRISTINA ORTIZ, on behalf of plaintiffs and a class, ) ) ) | |
| Plaintiff, ) ) | Case No. 17-cv-5795 |
| v. ) ) | Hon. Manish S. Shah |
| FAY SERVICING, LLC, ) ) | |
| Defendant. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS SETTLEMENT AGREEMENT**

Plaintiffs, David Pagan and Cristina Ortiz, individually and on behalf of a Settlement Class, respectfully request that this Court grant final approval of the class action settlement ("Settlement") entered into between plaintiffs David Pagan and Cristina Ortiz, and defendant Fay Servicing, LLC, and submit this memorandum in support of their request. This Court gave preliminary approval to the Settlement on November 8, 2018.

**I.      SUMMARY OF NOTICE GIVEN TO THE CLASS
         AND CLASS MEMBER PARTICIPATION.**

On December 21, 2018, notice of the Settlement was mailed by the Administrator, Dorothy Sue Marryman of Class-Settlement.com (the "Administrator") to 1,609 individuals identified as Class Members. Prior to mailing, the Administrator updated Class Members' names and addresses using the National Change of Address Database.

The United States Postal Service ("Postal Service") returned 212 of the notices as "undeliverable." The Administrator skip-traced the names and addresses and re-mailed 72 notices to a forwarding address. The Administrator was unable to find good addresses for 140

1

Class Members. In sum, 1,469 persons, or approximately 91% of the persons who were sent notice, received notice.

The class members are not required to submit claim forms to receive their payments. All class members' whose notices were not returned as undeliverable will automatically receive the payment provided for by the settlement. No class members requested to opt out of the settlement, and one class member objected to the settlement.

## II. OVERVIEW OF THE CASE.

Plaintiffs, individually and on behalf of a class, filed a lawsuit in the United States District Court for the Northern District of Illinois, against Defendant, Fay Servicing, LLC doing business as Fay Mortgage Services ("Fay Servicing" or "Defendant"). The lawsuit is entitled *David Pagan and Cristina Ortiz, on behalf of plaintiffs and a class v. Fay Servicing, LLC, doing business as Fay Mortgage Services,* Case No. 17-cv-5795, and it alleged that defendant, Fay Servicing, LLC, violated 15 U.S.C. §1692g, 15 U.S.C. §1692e, 1692e(2) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA"), by sending a "validation notice" which failed to accurately state the amount owed and what it consisted of, and which contained false statements. Specifically, plaintiffs asserted that defendant sent a notice which contained zeros for the current unpaid accrued interest, escrow balance, late charges, despite money being due for those categories, and listed an inaccurate total amount of debt.

### III. THE ADMINISTRATION OF THE SETTLEMENT.

#### A. The Preliminary Approval Order.

In the Preliminary Approval Order (the "Order"), the Court specifically found that the proposed class ("the Class") satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order preliminarily certified the Class defined as:

2

> Class Definition: (a) all individuals in Illinois, Indiana and Wisconsin (b) to whom Fay Servicing, LLC sent a "validation notice" (c) which failed to include amounts owed for escrow, unpaid accrued interest, late charges and/or NSF charges, (d) on a residential mortgage (e) that was in default when Fay Servicing, LLC obtained the loan, (f) which letter was sent at any time during a period beginning one year prior to the filing of this action through and including the date of certification of the class. Defendant represents based on reasonable investigation that the Class as defined above consists of approximately 1609 loan accounts.

The Order also set deadlines and procedures for Class Members to either submit claims and/or object to the Settlement.

### B. The Sending of Class Notice.

On December 21, 2018, notice of the Settlement was mailed by the Administrator to the 1609 individuals identified as Class Members. Exhibit A, *Declaration of Dorothy Sue Merryman* Prior to mailing, the Administrator updated the Class members' addresses using the National Change of Address update process. The Administrator established a toll-free telephone number that class members could call for information about the settlement.

The United States Postal Service ("Postal Service") returned 212 of the notices as "undeliverable." The Administrator skip-traced those remaining names and addresses and re-mailed 72 notices to a forwarding address. The Administrator was unable to file good addresses for 140 Class Members. The costs of sending the Class Notice and mailing checks to the Class Members will be deducted from the Class Fund. The cost of administration was $4,220.

### C. The Value of the Settlement

The Settlement Agreement is attached as Exhibit B. The Court previously considered the terms of the Settlement which provide for defendant to pay certain sums to be distributed, subject to the Court's approval, as follows:

1. **Class Recovery**. The balance of the Settlement Fund, after the costs, plaintiffs' award and attorney's fees are deducted, shall be distributed equally by the Settlement

3

Administrator to the Class Members whose Class Notices were not returned as undeliverable by the United States Postal Service. If there is more than one borrower on an account, they will be treated as one class member for the purposes of the settlement. For jointly held accounts, checks will be payable to all joint borrowers, and will be mailed to the first borrower listed on the account. If the administrative costs are as proposed, at $4,220, then $178,280 would be left in the class fund for distribution, which amounts to $121.36 per loan account/Class Member.

        2.     **Relief to Plaintiff**. The named plaintiffs shall receive a total of $5,000 as damages for their claims, and as an incentive award for bringing the claims on behalf of the Class. "Incentive awards "are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litigation*, 264 F.3d 712, 722 (2001). If those individuals "would have stepped forward without the lure of an 'incentive award,' there is no need for such additional compensation." Id. at 723. This award is in line with what has been awarded in other cases in this District. *See e.g., In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (awarding $5,000 to class representatives). The plaintiffs cooperated with written discovery, including providing information that was used to answer the discovery, reviewing and approving drafts of the responses, and locating and sending responsive documents. The plaintiffs also monitored the status of the case and approved settlement demands and counters.

        3.     **Attorneys' Fees and Costs**. Counsel for plaintiffs and the Class shall petition the Court for approval of attorneys' fees and costs not to exceed $62,500, or 25.96% of the net fund, which will be deducted from the Settlement Fund.

D.  **Class Members' Response To The Settlement**.

One class member sent correspondence which might be an attempt to opt out of the class (Exhibit C). Class counsel reached out to that class member to try to determine their intent, but has received no response. Class counsel has therefore filed a motion and served it on that class member, in an attempt to establish that class member's intent with respect to the settlement.

Another class member, Deborah Karim, has objected to the settlement. (Exhibit D) Ms. Karim's objection alleges that she suffered a foreclosure in Illinois due to Fay's actions, and that she has been having additional problems with Fay relating to a second property in Florida. Ms. Karim's Florida issues are not within the class definition in this case, and would clearly not be covered by the release in this case. This case only covers three states – the states included in the 7th Circuit Court of Appeals.

Ms. Karim requests that the settlement cover the entire United States. However, there is ample precedent in the Seventh Circuit for classes that are limited by geographic area in order to ensure a sufficient recovery for the class. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Nichols v. Northland Groups, Inc.,* 2006 WL 897867 (N.D.Ill. 2006) (certifying Illinois class); *Johnson v. Enhanced Recovery Co., LLC,* 325 F.R.D. 608 (N.D.IN 2018) (certifying Indiana class). If the class had covered the entire United States, the recovery to the class members would have been de minimis, due to defendant's net worth and the number of letters sent. Class members from other states, including Ms. Karim are free to file individual cases, or class actions of their own, if they so desire.

As to Ms. Karim's other concerns, the release in this case is limited to the claims alleged in the complaint with respect to the validation notices in question, and would not cover other wrongful conduct relating to a foreclosure action. The release is limited to claims relating to or

arising from specific form documents which contained errors, which were sent by Fay when it first acquired servicing of a loan. The release specifically excludes claims relating to: "1) whether any specific mortgage debt is in fact owed to the Released Parties and the amount thereof, (2) the Released Parties' crediting of specific payments, (3) the Released Parties' handling of the escrow account, and the (4) the Released Parties' reporting of the alleged specific mortgage debt to the credit reporting bureaus." Ms. Karim does not go into details regarding Fay's alleged malfeasance in her case, but it does not seem to be related to the sending of initial validation documents by Fay in the form of the document covered by the release, as the mistakes alleged in those documents would not cause somebody to lose their home to foreclosure.

Finally, Ms. Karim's objection also requests that she be paid the $5,000 that is supposed to go to the named plaintiffs. However, as noted herein, a class representative award in that amount is well within the range found to be reasonable. Unlike Ms. Karim, the plaintiffs attended to this case for over a year and a half and assisted in responding to written discovery. Given the limited scope of the release, Ms. Karim is free to pursue her own claims against Fay if she in fact has substantial damages.

This Court should therefore reject Ms. Karim's objection to the settlement.

### IV. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

The Court should grant final approval to the Settlement. The Class meets all the requirements of Fed. R. Civ. P. 23 and the Settlement is fair and reasonable.

#### A. The Class Meets All the Requirements of Fed. R. Civ. P. 23(a) and (b)(3)

1. The Settlement Class of 1,609 persons is sufficiently numerous such that joinder is impracticable;

  2. Common questions of law and fact predominate over any questions affecting only individual Settlement Class Members, and included whether defendant's form document complied with the FDCPA and whether defendant had a valid bona fide error defense as defined by the FDCPA.

  3. The claims of plaintiffs David Pagan and Cristina Ortiz are typical of the Class Members' claims;

  4. Plaintiffs David Pagan and Cristina Ortiz, and their attorneys, Daniel A. Edelman and Tara L. Goodwin of Edelman, Combs, Latturner and Goodwin, LLC, are capable of fairly and adequately protecting the interests of the Settlement Class in connection with the Settlement; and

  5. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

  **B.** **The Settlement Is Fair, Reasonable, and Adequate**

In assessing the fairness of class settlements, courts consider six factors:

  1. The strength of the plaintiff's case on the merits measured against the settlement terms;

  2. The complexity, length, and expense of further litigation;

  3. The amount of opposition to the settlement;

  4. The reaction of members of the class to the settlement;

  5. The opinion of competent counsel; and

  6. The state of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Taking into account these six factors, the court should approve the settlement.

### 1. The Strength of the Plaintiffs' Case on the Merits Measured Against the Settlement Terms.

"The most important factor" in determining whether a proposed settlement satisfies Rule 23 is the "strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (citations omitted). Specifically, the court must "estimate the likely outcome of a trial" to determine the adequacy of a settlement. *Eubank*, 753 F.3d at 727. *Gerich v. Chase Bank, USA, NA,* 316 F.R.D. 215, 227 (N.D.Ill. 2016). "The court should not "reject[ ]" a settlement "solely because it does not provide a complete victory to plaintiffs," for "the essence of settlement is compromise." *Id.,* 316 F.R.D. at 228.

The FDCPA caps a class's recovery for statutory damages at the lesser of 1% of the debt collector's net worth or $500,000. 15 U.S.C. §1692k(a)(B). Based upon the financial information defendant provided to plaintiffs' counsel and the nature of the claims alleged, they believe that the Agreement is fair and reasonable, would be in the best interest of the Class, and should be approved by the Court. Defendant disputes that any payments made by Class Members constitute actual damages or were caused by the alleged FDCPA violation at issue, and plaintiffs' counsel agrees that excessive payments based on the notice were unlikely since the letters understated the amounts actually owed.

The amount of the fund going to the Class Members is approximately 50% of the maximum possible statutory damages. The percent being recovered by the class members, in cash, with no need to submit a claim form, compares extremely favorably to other class action settlements. Numerous courts have approved settlements where the class was recovering 10-12% of their maximum damages. *Schulte v. Fifth Third Bank, NA*, 805 F.Supp.2d 560, 584 (N.D.Ill. 2011); *In re Ravisent Techs., Inc*. *Sec. Litig*., 2005 WL 906361, at *9 (E.D.Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing study by Columbia

University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

> **2. and 6.      The complexity, length, and expense of further litigation and the state of the proceedings and the amount of discovery completed.**

If this case had not settled, extensive litigation would have been necessary. Defendant asserted a bona fide error defense, so lengthy oral and written discovery into how the alleged errors occurred in the letters would have been necessary. Summary judgment motions on plaintiffs' legal theory and a trial on the bona fide error defense would have been likely, along with possible appeals. The case settled after written discovery and information about defendant's net worth and the class size were exchanged. The second and sixth *Accretive Health* factors weigh in favor of approval of the settlement. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N. D. Ill. 2011) (approving settlement when non-approval would have resulted in substantial additional litigation).

> **3-4.      The amount of opposition to the settlement and the reaction of members of the class to the settlement.**

Substantial opposition to a settlement weighs against approving a settlement. Here, there was one unfounded objection, and only one possible attempt to opt out. The third and fourth *Accretive Health* factors plainly weigh in favor of approval of the settlement.

> **5.      The opinion of competent counsel.**

Class Counsel, experienced consumer lawyers, believe that the settlement is fair, reasonable, and adequate. The Settlement Class members are obtaining a cash recovery which is reasonable in light of defendant's net worth, and the fact that the class members were not likely to have suffered actual damages. *Schulte*, 805 F. Supp. 2d at 586-87 ("Class Counsel has

extensive experience in consumer class actions and complex litigation and there is no indication that the Settlement Agreement is the victim of collusion. Class Counsel believes that the Settlement is beneficial to the Class and meets the class-certification requirements of Rule 23. The Court thus concludes that the opinion of competent counsel in this case supports its approval of the Settlement.")

## V.     THE AWARD TO PLAINTIFFS IS FAIR AND REASONABLE.

The Settlement provides for payment to plaintiffs David Pagan and Cristina Ortiz of $5,000. Plaintiffs assisted in responding to and reviewing drafts of written discovery and communicated extensively with class counsel over the course of the litigation.

"Incentive awards "are justified when necessary to induce individuals to become named representatives." *Synthroid 1*, 264 F.3d at 722. If those individuals "would have stepped forward without the lure of an 'incentive award,' there is no need for such additional compensation." *Id.* at 723. When determining whether and how much to award as an incentive for a named plaintiff, courts are instructed to consider "actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook,* 142 F.3d at 1016." *Kolinek v. Walgreen Co.*, 311 F.R.D. 48, 503 (N.D.Ill. 2015). Courts have granted incentive awards of $5,000 to class representatives who have done little compared to what the Pagans did in this action. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041 (N.D. Ill. 2011) (awarding $5,000 to class representatives who were not called on to answer discovery).

## VI.    THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.

Class Counsel, Edelman, Combs, Latturner & Goodwin, LLC, is filing a separate petition for fees in the amount of $62,500, the maximum amount defendant agreed to pay in fees and costs pursuant to the Settlement. For the reasons set forth in the petition, Class Counsel respectfully requests an award of $62,500 in fees and costs, or 25% of the class fund.

While a district court may use the lodestar method, the percentage of recovery method, or some combination of the two, *Florin v. Nationsbank of Georgia, N.A*., 60 F.3d 1245, 1247 n. 2 (7th Cir. 1995) "'[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class especially where the percentage accurately reflects the market." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.,* 280 F.R.D. 364, 379 (N.D. Ill. 2011) ("Kentucky Chicken") (internal quotations omitted) (holding that a fee request which represented approximately 32.7% of the fund created by the settlement was both "reasonable" and "arguably below the norm" of market rate for contingency fee cases of 33 1/3-40% plus the cost of litigation). "Where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market" is "33.33% of the common fund recovered." *Kentucky Chicken*, 280 F.R.D. at 381 (Internal quotation omitted), is consistent with the 33% that Class Counsel is seeking here.

It has been well established in the Seventh Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace. Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different. It is well established that when a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert,*

11

444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *In re: Synthroid Marketing Litigation,* 264 F.3d 712, 717 (7th Cir. 2001). When deciding on appropriate attorney compensation in a common-fund case, a court must endeavor to award "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re: Synthroid Marketing Litigation*, 264 F.3d at 718.

The Seventh Circuit in *Synthroid* explained that determination of the market rate for the legal fees should be based in part on the following factors:

> The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case. Id. at 721.

Plaintiffs' counsel took this case on a contingent fee basis over 1.5 years ago, and thus was faced with a significant risk of non-payment. A fee request of 25% of the Settlement Fund (or 25.96% of the net settlement benefits to the class members) is at the lower end of awards seen in similar cases. The market rate for contingent fees in consumer cases such as this is in the 25% to 38% range, depending on various facts and circumstances. *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), aff'd, 160 F.3d 361 (7th Cir. 1998) (38% awarded); *Spicer v. Board of Options Exchange*, 844 F. Supp. 1226 (N.D Ill. 1993) (29% awarded); *Family L.P. v. Price Waterhouse* LLP, 2001 WL 1568856 (N.D. Ill. 2001) (33 1/3 % awarded); *Gilbert v. First Alert, Inc.*, 1998 WL 14206 (N.D. Ill. 1998); (30% awarded); *Goldsmith v. Technology Solutions Co.,* 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. 1995) (33 1/3 % awarded); *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399 (7th Cir. 2000) (25% awarded); *Stumpf v. Pyod, LLC,* 2013 WL 6123156 (N.D.Ill. Nov. 20, 2013) (30% of fund in FDCPA case); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185 (N.D.Ill. 2018) (approving one third of net settlement fund).

Under the common fund approach, "the district court must consider how much compensation class counsel should receive for incurring the risk of nonpayment when it took the suit." *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 566 (7th Cir. 1994). This case was prosecuted by plaintiff's counsel on a contingent fee basis with no assurance of any fee. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. *See In re Continental Illinois Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiff's counsel must be compensated adequately for the risk of non-payment); *Ressler v. Jacobsen*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Class Counsel filed a well researched complaint alleging complex claims for relief under federal law. The parties engaged in written discovery and lengthy and protracted settlement negotiations. Class members will automatically recover approximately $121 each. The portion of the fund going to the class members is approximately 50% of the maximum possible statutory damages. In light of the work performed in this matter, Class Counsel's request for $62,500, which represents 25.96% of the net Settlement Fund, is reasonable.

Due to the fact that Class Counsel's compensation is entirely contingent, the fees being requested are within the typical market range in such contingency fee cases, the risk counsel faced recovering on the claims alleged, and the substantial recovery negotiated for the class, the Court should award the $62,500 attorney's fees requested from the Settlement Fund.

## VII. CONCLUSION

For all the foregoing reasons, plaintiffs, individually and on behalf of themselves and all others similarly situated, by Class Counsel, respectfully request that this Court grant final approval of the class settlement agreement.

    Respectfully submitted,

    For Plaintiffs and the Class:

    */s/ Tara L. Goodwin*
    Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603-3593
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com
dedelman@edcombs.com
tgoodwin@edcombs.com

## CERTIFICATE OF SERVICE

    I, Tara L. Goodwin, hereby certify that on February 27, 2019, I caused to be filed the foregoing document via the CM/ECF System, which caused to be sent notification of such filing to all counsel of record.

                                                                               /s/ *Tara L. Goodwin*
                                                                               Tara L. Goodwin

Daniel A. Edelman
Tara L. Goodwin
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)